26CA0223 Peo in Interest of CM 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA0223
Weld County District Court No. 25JV43
Honorable Troy Hause, Judge

The People of the State of Colorado,

Appellee,

In the Interest of C.M., a Child,

and Concerning J.M.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BERGER*
Grove and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1　　In this dependency or neglect proceeding, J.M. (father) appeals the judgment entered on a jury verdict adjudicating C.M. (the child) dependent or neglected.  Father also appeals the juvenile court's dispositional order adopting a treatment plan for him.  We affirm.

## I.　　Facts and Procedural History

¶ 2　　Following a referral raising concerns that the child was born substance-exposed, a caseworker from the Weld County Department of Human Services (the Department) met with the parents.  During the meeting, father admitted that he used methamphetamine daily to treat his attention-deficit hyperactivity disorder (ADHD).  Father then entered into a safety plan with the Department, agreeing to take drug tests and have supervised contact with the child.  But after he did not comply with the testing requirement, the Department filed a petition in dependency or neglect.

¶ 3　　Father denied the allegations and requested an adjudicatory jury trial.  After a two-day trial, the jury returned special verdicts finding that the child lacked proper parental care as a result of father's actions or omissions and that her environment was injurious to her welfare.  *See* § 19-3-102(1)(b), (c), C.R.S. 2025.  The

1

juvenile court then adjudicated the child dependent or neglected and, after a contested dispositional hearing, adopted a treatment plan for father.

## II. Juror S.

¶ 4 Father contends that the juvenile court erred by denying his challenge for cause to Juror S. and by denying his subsequent request for a mistrial. We disagree.

### A. Applicable Law and Standard of Review

¶ 5 Under C.R.C.P. 47(e)(6) and (7), a court may remove a juror for cause based on an "unqualified opinion or belief as to the merits of the action" or "[t]he existence of a state of mind in the juror evincing enmity against or bias to either party." *See also* C.R.J.P. 4.21(c) ("Rule 47 of the Colorado Rules of Civil Procedure applies to adjudicatory jury trials except with respect to peremptory challenges."). However, a court need not excuse a juror for cause when, "after explanation and rehabilitative efforts, the court believes that [the juror] can render a fair and impartial verdict based on the instructions given by the judge and the evidence presented at trial." *People v. Clemens*, 2017 CO 89, ¶ 16.

¶ 6     "A mistrial is a drastic remedy that is warranted only when the prejudice to the [moving party] is so substantial that its effect on the jury cannot be remedied by other means." *People v. Dore*, 997 P.2d 1214, 1221 (Colo. App. 1999).

¶ 7     A challenge for cause is entrusted to the sound discretion of the juvenile court, and we will not disturb a court's decision to deny a challenge for cause absent an abuse of discretion. *Day v. Johnson*, 232 P.3d 175, 178 (Colo. App. 2009). We defer to the juvenile court's assessment of a prospective juror's responses because the juvenile court is uniquely positioned to evaluate the demeanor and body language of the prospective juror. *Id.*

¶ 8     Similarly, a trial court has broad discretion to grant or deny a motion for a mistrial, and we will not reverse its decision absent an abuse of that discretion and prejudice to the moving party. *People v. Salas*, 2017 COA 63, ¶ 9.

¶ 9     A juvenile court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law." *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

¶ 10     During voir dire, Juror S. stated that she did not know if she was "emotionally strong enough for a case for child neglect" because she had "two young small children" and was feeling "quite overwhelmed." In response to questions from father's counsel, she further stated that she did not believe a parent using methamphetamine could be fit.

¶ 11     After voir dire, father challenged Juror S. for cause on the basis that her reactions indicated that she "[could not] follow the law." The juvenile court declined to dismiss Juror S. for cause, finding that she indicated that she would follow the law, was not prejudiced, and would be fair and impartial. None of the parties used their peremptory challenges for Juror S, and she was impaneled on the jury.

¶ 12     Shortly after the juvenile court announced the selected jurors and excused them to the jury room, the judicial assistant reported that Juror S. informed her that she was having a panic attack. Father's counsel requested a mistrial. The juvenile court denied father's request, noting that, during voir dire, Juror S. "did[ not] display any kind of . . . being uncomfortable whatsoever." But the

court acknowledged that if Juror S. became "unable to function" or appeared to be "in distress" it would need to reconsider father's request. Although the juvenile court and counsel continued to check in regarding Juror S. throughout the trial, father's counsel did not renew his request for a mistrial.

## C.    Juror Challenge

¶ 13    Father asserts that the juvenile court erred by denying his request to remove Juror S. for cause because she "exhibited bias during voir dire." Specifically, he contends that her responses demonstrated that "she had already reached conclusions about the use of a drug and whether a person could parent, without hearing the evidence in the case," "was having difficulty even sitting in the courtroom," and "might personalize the facts of the case to her own family." But when the juvenile court asked if any jurors were unable or unwilling to decide the case solely on the evidence presented and the law as instructed, Juror S. did not indicate any inability or unwillingness to do so. *See People v. Lefebre*, 5 P.3d 295, 301 (Colo. 2000) ("A prospective juror who makes a statement suggesting actual bias may nonetheless sit on the jury if she agrees to set aside any preconceived notions and make a decision based on

the evidence and the court's instructions."), *overruled on other grounds by People v. Novotny*, 2014 CO 18; *see also Clemens*, ¶ 19 ("[A] prospective juror's silence in response to rehabilitative questioning constitutes evidence that the juror has been rehabilitated when the context of that silence indicates that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.").

¶ 14    Although father asserts that Juror S. "had expressed potential difficulty being impartial," our review of the record reflects that it was father's counsel, not Juror S., who reported concerns about the juror's alleged impartiality. Indeed, when denying father's request, the juvenile court acknowledged that Juror S. had opinions about the hypotheticals given but also considered that her responses were given before the court instructed the prospective jurors that they were required to follow the law set down by the court. Moreover, the court found that the juror indicated she would follow the law, was not prejudiced toward either side, and would be fair and impartial.

¶ 15    Based on these circumstances and this record, the juvenile court did not abuse its discretion in denying the challenge for cause

to Juror S. and allowing her to remain in the jury pool. *See Carrillo v. People*, 974 P.2d 478, 485-86 (Colo. 1999) (noting the "trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses" and discouraging "an appellate court from second-guessing those judgments based on a cold record").

### D.    Mistrial

¶ 16    Father contends that the court erred by denying his request for a mistrial because Juror S. was "having a mental health crisis" and was therefore unfit to serve on the jury.  In support, father focuses on (1) the judicial assistant's report that Juror S. indicated she was having a panic attack immediately after being impaneled; (2) the Department's counsel's report that Juror S. seemed upset, distracted, and angry during her opening statement; and (3) a report that Juror S. looked "wide-eyed" during testimony when she heard a person "screaming in the hallway."

¶ 17    But both of the first two events — Juror S.'s panic attack in the hallway and an angry, distracted appearance during the Department's opening argument — occurred before the presentation of evidence.  *See People v. Rhea*, 2014 COA 60, ¶ 68 (noting that the

7

argument of counsel is not evidence).  By all accounts, after opening statements, Juror S. appeared attentive and calm.  During the midday break, the juvenile court observed that Juror S. was "paying close attention," taking notes, and did not appear bothered by the evidence.  Counsel for the Department agreed that Juror S. appeared "to be a little bit mellowed out."  And at the end of the first day of trial, the juvenile court noted that Juror S. had been "really attentive to . . . all the witnesses' testimony," and did not appear anxious or upset.  *See Day*, 232 P.3d at 178.  Counsel for the Department agreed that Juror S. appeared "very attentive" and even smiled during the testimony when somebody made a joke.  Father's counsel confirmed that Juror S. had not acted out or appeared upset.

¶ 18    True, as father notes, there was one point during the testimony when a third party was overheard "screaming" in the hallway and Juror S. appeared "wide-eyed."  But father does not explain how that was an unusual reaction or that he was substantially prejudiced by that brief incident.  *See Salas*, ¶ 9.  Indeed, both the juvenile court and counsel for the Department agreed that the screaming was momentarily startling but that,

overall, Juror S. appeared comfortable and attentive to the evidence.

¶ 19     For these reasons, the juvenile court did not abuse its discretion by denying father's request for a mistrial.

### III.     Admissibility of Facts Related to Companion Case

¶ 20     Father contends that the juvenile court erred by allowing the Department to admit evidence regarding the pending dependency or neglect case concerning father's older child.  We disagree.

### A.     Preservation

¶ 21     The Department and the child's guardian ad litem (GAL) urge us not to address this claim, contending that father's counsel's objection to the evidence was insufficiently specific to draw the juvenile court's attention to the asserted error.  *See Martinez v. People*, 2015 CO 16, ¶ 14.  However, we need not determine whether father adequately preserved his argument because, even if we assume he did, we discern no basis for reversal.  *See L & R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where the outcome would not change).

## B. Standard of Review

¶ 22　It is well settled that we review the juvenile court's evidentiary rulings for an abuse of discretion. *People in Interest of M.H-K.*, 2018 COA 178, ¶ 60.

¶ 23　Nevertheless, father asserts that we should review his contention de novo because the court's evidentiary error infringed upon his right to a "fundamentally fair proceeding" and, thus, violated his right to due process. *See Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982) (explaining that intervening in the "fundamental liberty interest of natural parents in the care, custody, and management of their child" requires "fundamentally fair procedures").

¶ 24　"[F]undamentally fair procedures" require that "a parent must be provided with 'notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination.'" *E.B.*, ¶ 16 (citation omitted). "[O]nly errors that specifically and directly offend a defendant's constitutional rights are 'constitutional' in nature." *Wend v. People*, 235 P.3d 1089, 1097 (Colo. 2010). A court's error in admitting

10

evidence normally does not fall into that category. *See People v. Martinez*, 2020 COA 141, ¶ 27. We therefore reject father's contention and instead review the alleged error under the abuse of discretion standard.

## C. Applicable Law

¶ 25 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. But even relevant evidence should be excluded under CRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice."

## D. Analysis

¶ 26 Father's counsel moved to preclude any reference to his older child, the ongoing dependency or neglect case involving that child, and the protective order entered in that case, asserting that the evidence was irrelevant and prejudicial. The juvenile court agreed that evidence regarding the jury trial, jury verdict, and protective order from the case involving father's older child was irrelevant and prejudicial. However, the court allowed the presentation of evidence

regarding father's older child, her circumstances, and father's substance use monitoring, finding such evidence to be relevant.

¶ 27 During the adjudicatory jury trial, the Department and GAL presented evidence that (1) the child had a sibling who was also removed from father due to concerns of substance abuse; (2) that case remained open at the time of the adjudicatory trial; and (3) father had only taken four drug tests since the Department set up monitored sobriety for him in January 2024 as part of that case.

¶ 28 We conclude that the juvenile court did not abuse its discretion by allowing the admission of evidence regarding father's older child, her pending case, and his noncompliance with substance testing. The jury could properly consider whether it was likely or expected that father could provide proper parental care if the child was returned to him. Thus, the evidence met the relevance standard for admissibility. *See People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16 (explaining that under section 19-3-102(1)(b), (c) a child may be dependent or neglected if he or she "'will' lack proper parental care through the actions or omissions of the parent" or "the child's environment 'will' be injurious to his or her welfare"). The admitted evidence is precisely

the type of evidence that is admissible to establish prospective harm. *See id.* at ¶ 18 (noting that, when determining prospective harm, a fact finder may consider the parent's past treatment of other children and past conduct, including drug use).

¶ 29 Father asserts that because the Department did not allege prospective harm in its petition for dependency or neglect, evidence related to his older child was not relevant. However, the supreme court has interpreted section 19-3-102(1) to "implicitly incorporate the future tense" and, thus held that "courts can consider future situations — what has become known as 'prospective harm' — when determining whether a child is dependent and neglected." *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 12. Father cites no authority in support of his apparent assertion that the Department must separately plead "prospective harm." We are aware of none.

¶ 30 Moreover, even assuming, without deciding, that the court erred by admitting evidence related to the dependency or neglect proceeding involving father's older child and his noncompliance with substance testing, we conclude that any error was harmless because other competent evidence established that father had a long-standing history of substance abuse. *See Bly v. Story*, 241

P.3d 529, 535 (Colo. 2010) (noting that an error that does not substantially influence the outcome of the case or impair the basic fairness of the trial itself is harmless). Specifically, both the intake caseworker and the permanency caseworker testified that father had been using methamphetamine since he was about eleven years old, admitted to daily use, and compared his use to "a . . . person drinking coffee in the morning." Indeed, during his testimony father admitted that he had last used methamphetamine approximately six days before the adjudicatory trial. *See People in Interest of M.V.*, 2018 COA 163, ¶ 67 (allowing consideration of "whether the evidence was cumulative" and "the presence of other evidence corroborating or contradicting the point for which the evidence was offered" when assessing whether an error is harmless), *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56 n.10.

¶ 31    We are unpersuaded by father's contention that the harmless error standard of reversal should not apply. First, father incorrectly asserts that because "precedent dictates that a harmless error analysis is applicable in civil cases" and "[d]ependency cases are not civil," the harmless error analysis is inapplicable to this case. *See*

C.R.J.P. 4.1(b)(1) ("Dependency and neglect cases are unique civil cases . . . ."); *People in Interest of D.B.*, 2017 COA 139, ¶¶ 29, 31 (applying the harmless error analysis in a dependency or neglect case).

¶ 32    Second, father asserts that because his "substantial right" to parent his child was at stake it was "critical that appropriate procedures" were followed during the adjudicatory hearing.  Father has not demonstrated that the admission of the evidence regarding his older child's case "substantially influenced the outcome of [this] case or impaired the basic fairness of the trial itself." *Bly*, 241 P.3d at 535 (citation omitted).

¶ 33    For these reasons, father is not entitled to reversal of the adjudication.

## IV.    Treatment Plan

¶ 34    Father contends that the juvenile court erred by adopting an "overly broad" treatment plan.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 35    Except in some limited circumstances not applicable here, a juvenile court must adopt an appropriate treatment plan for a parent following a dispositional hearing.  § 19-3-508(1)(e)(I), C.R.S.

15

2025; *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 15. The treatment plan seeks to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required state intervention with the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25. Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12), C.R.S. 2025; *People in Interest of K.B.*, 2016 COA 21, ¶ 13.

¶ 36 We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan. *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). Because the purpose of a treatment plan is to address the barriers to reunifying families, it may include issues that were not the basis for the adjudication judgment. *People in Interest of M.W.*, 2022 COA 72, ¶ 43. Generally, a court may require treatment "when it is warranted by the record before the court." *L.M.*, ¶ 51.

16

¶ 37    The juvenile court has discretion to formulate an appropriate

treatment plan for a parent. *People in Interest of C.L.S.*, 934 P.2d

851, 855 (Colo. App. 1996).

## B.    Analysis

¶ 38    After hearing the evidence at the dispositional hearing, the

juvenile court adopted a treatment plan for father which required

him to, among other things, engage in substance abuse treatment

and monitoring, address his mental health and ADHD by

completing a neuropsychological evaluation, and obtain and

maintain suitable housing.  The court found that the treatment

plan, including those objectives, was (1) appropriate; (2) "properly

formulated to reduce or eliminate the problems which led to the

filing of the [p]etition"; and (3) in the child's best interests.  In so

finding, the court focused on father's long-term substance abuse

and barriers to his ability to parent the child.

¶ 39    The record supports the court's findings.  The permanency

caseworker explained why she proposed each disputed treatment

plan objective.  Specifically, she included the substance use

objective because substance abuse concerns precipitated the

Department's involvement with the family, father admitted to

17

long-term substance use, and, based on father's lack of compliance with court-ordered substance testing, the caseworker had concerns that father was continuing to use methamphetamine despite his recent denials. Similarly, the caseworker recommended the mental health objective, including completion of a neuropsychological evaluation, "to get [an] official diagnosis and treatment" for father's self-reported ADHD. Finally, because father described his home as unsuitable for the child, the caseworker proposed the housing objective to ensure that, if the child was to be returned to father's care, then "she would have a safe place to go." The caseworker opined that the treatment plan objectives were necessary for father and the child to be successfully reunified. The court was entitled to rely on those opinions.

¶ 40 Father contends that the substance use, mental health, and housing objectives were "not narrowly tailored" to mother's substance use while pregnant — the reason he asserts that the Department became involved with the child — and, therefore, the juvenile court erred by adopting the treatment plan. But, in the petition for dependency or neglect, the Department also listed father's substance use, including his use of methamphetamine to

self-treat his ADHD, as a reason for its involvement with the family. During the dispositional hearing, the ongoing caseworker identified father's substance use as one of the reasons for the Department's involvement with the family.

¶ 41    Contrary to father's assertion, the court is not limited to the issues "outlined in the petition" when adopting a treatment plan. The purpose of a treatment plan is to address "the material issues that are barriers to reunifying children with their parents." *M.W.*, ¶ 43; *see also C.L.S.*, 934 P.2d at 856 ("[T]he specific ground on which the jury [finds] the child to be dependent and neglected [does] not restrict the juvenile court's discretion to formulate a treatment plan in the best interests of the child.").

¶ 42    With record support, the juvenile court found that the treatment plan was necessary and appropriate to address father's barriers to reunification with the child. Indeed, during the dispositional hearing father agreed that if the child were to return to his care "a safe home environment [would be] necessary." On appeal, father acknowledges that the "treatment plan may contain objectives that would benefit [him]." Put another way, it is

undisputed that father needed to address his substance use, mental health, and housing to become a fit parent.

¶ 43　　To the extent father asserts that the neuropsychological component of his treatment plan was inappropriate because the provider required three to six months of demonstrated sobriety before beginning the evaluation, we are not persuaded. Father cites no law supporting his suggestion that a treatment plan component is per se inappropriate simply because it could take several months to complete.

¶ 44　　Because the record supports the court's findings that father's treatment plan, including the substance abuse, mental health, and housing objectives, was appropriate, the court did not abuse its discretion in establishing the treatment plan.

## V.　Disposition

¶ 45　　The judgment is affirmed.

JUDGE GROVE and JUSTICE MARTINEZ concur.